```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                      WESTERN DIVISION
```

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | No.  05-20237 |
| ) | |
| DONNELL CAMPBELL, ) | |
| ) | |
|     Defendant. ) | |

ORDER ON DEFENDANT'S MOTION TO SUPPRESS

This cause is before the Court on the motion of Defendant, Donnell Campbell, through his counsel, to suppress evidence filed on September 20, 2005.  Defendant seeks to suppress a quantity of material alleged to be marijuana and weighing approximately 11.9 grams and a Colt Mark IV .380 caliber handgun, both seized on Tuesday, February 15, 2005, at approximately 7:30 p.m. near 275 South Parkway, Memphis, Tennessee.[1]

Defendant asserts that there are four issues raised:

    1.    Are there articulable facts which support a reasonable belief by Officer Brady that the defendant was armed and/or presented a danger to the safety of the officer at the time of the "patdown" of the defendant for "officer safety?"

---

[1]    The motion also seeks to suppress any oral or written statement obtained as a result of the search.

>    2.   Did Officer Brady[2] detect anything which supported a reasonable belief that the defendant was armed and presented a threat to the officer's safety after the conduct of the "patdown" for "officer safety?"
>
>    3.   Was Officer Brady[3] justified in removing the contents of the defendant's pocket?
>
>    4.   Was Officer Brady[4] or any other officer justified in conducting a warrantless search of the passenger seat area of the vehicle, from which the defendant had been removed, as a search incident to an arrest resulting from the seizure of the alleged marijuana from the defendant's pocket?

Memorandum of Law in Support of Motion to Suppress Evidence (September 20, 2005) at 2-3.

The United States, in response to Defendant's motion, initially asserted theories including an assertion that the owner of the vehicle, Jane Johnson, had consented to a search of her vehicle, in which the Defendant, Donnell Campbell, was a passenger. The testimony of the officers at the hearing, however, offered no evidence to support the proposition that Ms. Johnson consented to the search of her vehicle and, therefore, the Government's theory of consent is without merit.

At the hearing, three officers testified and the Defendant testified. The officers testifying were Valerie Brady, a Memphis

---

[2]   or any other officer, including Officer Kosso.

[3]   See footnote 2 supra.

[4]   See footnote 2 supra.

Police Department Officer since 1999; Andrew Kosso, a Memphis Police Department Officer for approximately the last 5 years; and J. Michael Quinn, a Memphis Police Department officer for somewhat over 2 years.

Officer Brady was the investigating officer and testified that, on the evening of February 15, 2005, she was checking hot spots for possible criminal activity.  A hot spot is a location that is frequented by individuals engaged in drug trafficking, prostitution, car theft, and other illegal activities.  The area that she was checking is the area of South Parkway and Latham, and specifically the area under the viaduct crossing South Parkway at that location.  All of the witnesses agree that the vehicle, driven by Jane Johnson and in which the Defendant, Donnell Campbell, was a passenger, was located either partially or completely under the viaduct in the early evening hours of Tuesday, February 15, 2005.

Officer Brady testified regarding the route that she took in arriving at the location and regarding her initial observations of the car parked essentially "under the bridge."  She testified that initially she could not see the passenger clearly, that she approached the vehicle (apparently without her flashing lights on) and proceeded to "run" the automobile tags.  The initial

response was that the "tags were not on file." Officer Brady thought that the vehicle might be stolen and, at that point in time, called from her vehicle for back up. Officer Brady then began to move her vehicle toward the Johnson vehicle at which time the driver, Jane Johnson, started the vehicle and attempted to drive off. Officer Brady stopped Ms. Johnson, approached Ms. Johnson's vehicle, and, approaching the driver side, requested that the driver show her I.D. According to Officer Brady, Ms. Johnson showed her her I.D. Officer Brady then asked the passenger regarding his identification and he indicated that he did not have an I.D.

According to Officer Brady, at that point, she placed Ms. Johnson in the back of her squad car while she checked to determine whether or not the vehicle driven by Ms. Johnson was stolen. She also asked Ms. Johnson what she was doing at that location and Ms. Johnson stated that she was there just to talk with a co-worker.

Officer Brady then went to the passenger side and inquired of the defendant why he was at that location, and he indicated he was there for a sexual favor. Officer Brady observed that these were inconsistent statements.

4

According to Officer Brady, while she was determining whether or not the vehicle was stolen, and while she was in the presence of Ms. Johnson, other officers of the Memphis Police Department responded to her call.  Specifically, a two-officer car arrived with one of the officers including Officer Kosso.  Officer Brady did not have further contact with Defendant Campbell and did not see the gun which was ultimately seized because, according to Officer Brady, she was pursuing the investigation of a possible stolen vehicle and awaiting further response from the dispatcher.

Officer Kosso arrived on the scene apparently after Officer Brady had removed Ms. Johnson from the vehicle.  Officer Kosso described the area as a "high prostitution, drug area" and indicated that it was "dark" when he arrived.  He confirmed that based on Officer Brady's statement that the passenger indicated he "had no I.D." and because he was "slouched in his seat," he asked Mr. Campbell to step outside of the vehicle.  Officer Kosso indicated that Campbell was detained so that he could "figure out" who he was and because Officer Kosso had a concern for officer safety.  It appears that he immediately conducted a patdown and, during the patdown, detected a "large bulge" in one of the Defendant's pockets which, based on the feel, he believed to be contraband.  Based on Officer Kosso's "plain feel" he

proceeded to remove from the Defendant's pocket a bag of a substance which appeared to be marijuana.  It appears that the Defendant was then placed in the back of Officer Kosso's squad car.

On cross examination, Officer Kosso indicated that he had done hundreds of patdowns, that he knew upon feel that the material he was touching was not a firearm, and that he believed that what he felt was contraband.  Officer Kosso did not do a search of the vehicle.

After Mr. Campbell was removed from the vehicle and placed in the back of Officer Kosso's squad car, an additional officer, J. Michael Quinn[5], arrived on the scene.  Officer Quinn observed that everything appeared to be under control and then proceeded to walk to the side of the purple Honda Accord that had been occupied by Ms. Johnson and Mr. Campbell.  As he walked by the car, he shined a flashlight into the vehicle and, according to Officer Quinn, saw the butt of a firearm protruding from underneath the passenger side front seat.

---

[5]   Officer Quinn testified that he came to the location to "see if anyone needed help."  While Quinn could not recall if he removed the gun from the vehicle, he did recall that the gun was tagged into evidence at that time.

Defendant, Donnell Campbell, testified that he had know Jane Johnson for five or six months and that he knew her as a "sex partner." Mr. Campbell had been at another location and had called Ms. Johnson to pick him up so that she could "satisfy his sexual needs." According to Mr. Campbell, Ms. Johnson drove him to the location so that oral sex could be performed on him.

It was Mr. Campbell's testimony that, as they approached the area under the viaduct (driving down Lathram Street and turning right at the viaduct), they passed Officer Brady's vehicle, parked near the corner of Lathram and South Parkway. Johnson and Campbell proceeded, according to Campbell, to pass Brady's squad car, turning right and parking partially under the bridge (the parkway viaduct). Within five minutes, according to Campbell, Officer Brady approached the vehicle, told Jane Johnson to turn off the car (disengage the ignition), and asked Johnson if she had a driver's license. According to Campbell, Brady looked a the license and then asked Campbell if he had an I.D. According to Campbell, he indicated "yes, I do," but that Officer Brady did not request the I.D. and went back to her own vehicle. Officer Brady did not come back to the vehicle, according to Campbell, until after Officer Kosso and his partner arrived. According to Campbell, Officer Kosso then came to the passenger side and asked

Campbell to step out.  At that time, Campbell indicated that "I've got an I.D.."  Kosso, according to Campbell, however, still required him to step outside the vehicle, place his hands on the vehicle, and spread his legs.  At that time, the Defendant was patted down and, according to Campbell, Kosso, in fact, reached inside of his pocket (without patting the pocket), and removed the alleged contraband.  At that time, according to Campbell, he was placed in the squad car by Kosso and his I.D., cell phone, and money were placed on top of the car.

The property room sheet for February 15, 2005, was introduced by defense counsel and shows that Defendant, Donnell Campbell, did in fact have an I.D. which was recorded on the property room sheet on that date.

The Government, on cross examination, listed as evidence that the Defendant had six prior felony convictions (three for aggravated assault).

## LEGAL ANALYSIS

The Government argues that the officers had reasonable grounds to justify the investigative detention of the Defendant who was present in a parked vehicle, in a dark and isolated area

8

known for high crime activity, including prostitution and drug trafficking.  Officers may initiate an investigative detention if they have reasonable and articulable suspicion that a person is engaged in criminal activity which merits investigation.  <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).  The Court must consider the totality of the circumstances to determine whether a seizure is reasonable.  <u>United States v. Lane</u>, 909 F.2d 895 (6th Cir. 1990).  When police reasonably suspect that a person is engaged in criminal activity, police may stop that person, question that person for limited period of time, and frisk the person for weapons.  <u>Terry v. Ohio</u>, 392 U.S. 1 at 22-24 (1968).  However, to justify an investigative detention, the Government must point to specific and articulable facts that, together with rational inferences drawn from those facts, reasonably suggest that criminal activity has occurred or is imminent.  <u>Id</u>. at 24.  Courts afford considerable deference to the observations and conclusions of the police, reasoning that an experienced officer can infer criminal activity from conduct that seems innocuous to a lay observer.  <u>U.S. v. Arvizu</u>, 534 U.S. 266 (2002).

The evidence in this case, applying the totality of the circumstances test, is that Officer Brady was an experienced police officer.  She had worked in the particular area of the city for a significant period of time, and was aware that the

9

locality in question was a high crime area.  In fact, she had made arrests in the area, as had other officers who testified.

Based on the evidence in this case, it is clear that Officer Brady observed a vehicle with its engine off and its lights off in a somewhat isolated and dark area.  She approached the suspect vehicle in her patrol car.  At that point, Officer Brady could see that the vehicle was actually occupied.  Because of the circumstances and location, the officer became concerned that the vehicle might be a stolen vehicle.  At that point, Officer Brady activated her flashing lights.  The officer then heard the driver in the suspect vehicle start the engine in that vehicle and it appeared that the driver was attempting to drive away.[6]

These facts would tend to confirm to a reasonable officer that criminal activity might be afoot.  Officer Brady, therefore, opened the squad car door, approached the vehicle she had been observing, and removed the driver from the vehicle, and proceeded to investigate the status of the vehicle in an effort to determine whether or not it was stolen.  During this period, the

---

[6] See Transcript at 19 & 32.

driver, Ms. Johnson, was removed to the squad car.  When the driver was removed from her own vehicle, she was able to confirm that she had a driver's license but Officer Brady did not obtain any identification from the passenger at that time.

Before the investigation as to the status of the vehicle was concluded, other officers arrived on the scene as a result of a call from Officer Brady.[7]  These officers, acting on information supplied by Officer Brady, asked the passenger, Mr. Campbell, to step out of the vehicle, and a patdown was conducted.  As a result of the patdown and the "plain feel" by Officer Kosso, contraband was found on the Defendant, he was placed under arrest, and a subsequent officer found in plain view a firearm partially under the passenger's seat.[8]

The central question in this case is whether or not Officer Kosso had reasonable suspicion which justified his removal of the Defendant from the vehicle and his subsequent patdown.  It should be noted that there is little dispute that the events in the case occurred in a relatively short time frame.

---

[7] See Transcript at 50(Brady testifying: "it was all going on simultaneously"); Transcript at 40-41(Brady: "I was still standing by (on the radio) to find out if the car was stolen or not.")

[8] See Transcript at 75(Office Quinn: "it was in plain view.")

11

Under the facts in this case, the officers had the right to lawfully detain the vehicle to investigate the "tags not on file" initial information from the dispatcher so that a determination could be made as to whether or not the vehicle was a stolen vehicle.  It was during the inquiry as to the status of the vehicle that Officer Kosso removed the passenger.  Officer Kosso had available to him all of the information that Officer Brady had regarding the circumstances of the stop, the location of the stop, and the suspicious conduct of the occupants in the vehicle (sitting in darkened vehicle, engine off, with one individual slumped down in the passenger seat in a high crime area).  Of course, the range of police activities allowed during investigative detention must reasonably relate to the circumstances that initiated the initial detention. United States v. Sharpe, 470 U.S. 675 (1985).  Under the circumstances in this case, the investigative officers could reasonably detain Mr. Campbell to ascertain his identity. Terry v. Ohio, 392 U.S. 1 (1968).  Officer Kosso ordered Mr. Campbell out of the vehicle pending completion of both his identification and the investigation being conducted by Officer Brady.  Based on reasonable concerns for officer safety, Officer Kosso could reasonably conduct a patdown.  Officer Kosso could hear, from Officer Brady's radio transmissions and the responses of the dispatcher, the nature of the inquiry.  Officer Kosso was aware

that a determination was being made as to whether or not the vehicle was a stolen vehicle and could see the circumstances in which the vehicle was found (secluded area, darkened vehicle, high crime area, etc.).  See, Maryland v. Wilson, 519 U.S. 408 (1997).  The patdown of Mr. Campbell resulted in the immediately apparent detection of contraband.  Minnesota v. Dickerson, 508 U.S. 366 (1993).  The discovered controlled substance, of course, gave the officers probable cause to arrest the Defendant.

The record then supports the conclusion that Officer Quinn observed in plain view a portion of a firearm in the vehicle.  Therefore, the firearm was properly seized.

At the conclusion of the investigation, after the arrest of Mr. Campbell and the seizure of the firearm, it was determined by Officer Brady that the vehicle was not a stolen vehicle and Ms. Johnson was allowed to return to her vehicle and leave the scene.

The court concludes that there were articuable facts that supported a reasonable belief by Officer Brady that criminal activity was afoot, thus justifying a constitutional investigation pursuant to Terry v. Ohio, 392 U.S. 1 (1968).  Confronted with all of the facts and circumstances, Officer Kosso had a reasonable belief that he should proceed with the proper

identification of the Defendant and it was appropriate, under the facts and circumstances, to pat Mr. Campbell down.  Based on the plain feel doctrine articulated by the Supreme Court in <u>Minnesota v. Dickerson</u>, 508 U.S. 366 (1993), Officer Kosso was justified in removing, after detecting apparent contraband, the contraband and affecting the arrest of the Defendant.

Finally, under the plain view doctrine, Officer Quinn appropriately removed the firearm from the vehicle and tagged it for evidence in this case.

Defendant's Motion to Suppress is, therefore, DENIED.

ENTERED this 26th day of January, 2006.

                                      s/ JON P. MCCALLA
                                      UNITED STATES DISTRICT JUDGE

F:\USERS\Cathy\Orders on Motion to Suppress\2005\05-20237.suppr.wpd